687 A.2d 1120

Wilma A. BABB; Estate of James A. Baker, by Audrey L. Baker; Robert L. Blood and Isla Jean Blood, his wife; Joseph Braim and Joann Braim, his wife; John Halfast and Mary Halfast, his wife; George Holliday; Thomas W. Little and Bonita J. Little, his wife; John Mononen; Richared Neroda; Thompson W. Platz; Lester Randall and Dorothy Randall, his wife; Harold Stevens; Susan Vannatter; Delbert Walker and Michael Wierzbicki

v.

C. Robert CLEMENSEN, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 29, 1996.

Filed Dec. 10, 1996.

Reargument Denied Feb. 20, 1997.

C. Robert Clemensen, pro se, appellant.

Thomas A. Pendleton, Erie, for appellees.

Before TAMILIA, JOHNSON and BROSKY, JJ.

TAMILIA, Judge:

Pro se defendant C. Robert Clemensen, Esquire, appeals from the February 26, 1996 judgment which found the oil and gas leases existing between the plaintiffs and him had ex-

pired.[1] The leases, held by plaintiff/landowners, provided primary terms between three and ten years with clauses extending the leases for a second term contingent upon the fulfillment of particular conditions. The trial court found "since oil or gas are [sic] not being produced in paying quantities and royalties have not been paid in four years, it is hereby determined that the leases have expired by their own terms." (Slip Op., Joyce, J., 2/26/96, p. 5.)

Appellant argues he complied with the terms of the contracts which allowed him to extend the leases for an additional term or, alternatively, if he was in default, appellant contends the court erred by denying him the opportunity to remediate. Specifically, appellant contends plaintiffs' domestic use of the gas constitutes "production" for purposes of extending the primary leases all initially entered into in the late 1950's.

Clauses providing conditions precedent for extending the leases follow:

2. TO HAVE AND TO HOLD said premises for the purposes aforesaid during the term of ten (10) years from the date hereof (called 'primary term'), and as long thereafter as drilling operations for oil and gas are conducted thereon, hereunder, or oil or gas is produced therefrom hereunder, and or so long as said premises are used for underground storage of gas as herein provided.

Plaintiffs' Exhibits A, E, H, I, L, N.

TO HAVE AND TO HOLD the same (subject to the other provisions herein contained) for a term of ten years from this date (called 'primary term') and as long thereafter as oil or gas casing-head gas or either or any of them, be produced therefrom; or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as

1. The court found the claims of those plaintiffs who had joined the suit but did not appear at trial were dismissed without prejudice. They included Joseph Braim, George Holliday, Thomas Little, John Mononen, Richard Neroda, Harold Stevens and Michael Wierzbicki.

long as oil or gas or casing-head gas shall be produced therefrom.

Plaintiffs' Exhibit C.

It is agreed that this Lease shall remain in force for the term of ten years from this date and so long thereafter as oil or gas is produced from the premises or as operations continue for the production of oil and gas.

Plaintiffs' Exhibit J.

(Appellees' brief at p. 2.) In summary, in order for the leases to be extended, appellant must have made a good faith effort to maintain drilling operations and "produce" and/or store oil or gas on the premises. The last clause implies appellant's failure to so act would result in the termination of the leases at the end of the original term. There was no argument the original leases had expired and no drilling had taken place for at least three years immediately prior to the filing of this lawsuit. The questions before the fact-finder were, inter alia, had "production" ceased, had appellant made substantial investments in the wells making forfeiture thereof unconscionable, and did plaintiffs' household use of the gas act as a waiver to any breach by appellant.

The court entertained testimony on behalf of eight lessors.[2] The witnesses averred the wells on their property were no longer producing, appellant had ceased paying royalties and delay rental, and no longer stored natural gas on the premises. They also contended the equipment had deteriorated tremendously and appellant had ignored their requests for repairs. Appellant replied that with the exception of one well, none had produced since 1991, some since 1972. Appellant, who is a New York resident, explained the Ohio operator with whom he had an agreement to maintain the Pennsylvania wells had "caused him problems" beginning in or around 1990. Appellant further testified, however, he did not find a suitable replacement for the operator until late 1994 (N.T., 11/21/95, pp. 84, 85, 88). The evidence presented also supported appellees' averments appellant had failed to pay royalties for the

2. See footnote number 1.

past five years, had not paid delay rental fees, and had not stored gas on the leased premises, thereby failing to comply with the aforestated conditions precedent contained in the contract's habendum clauses. When faced with this evidence, including photos of rusted equipment surrounded by overgrown fields, the trial court, as the finder of fact, had sufficient evidence upon which to base its finding appellant had failed to comply with the terms of the contract which would have permitted him to extend the leases beyond their original terms. The leases had expired as a matter of law.

While research reveals scant Pennsylvania caselaw on the issues before the trial court and now submitted for our consideration, the facts before us have established that "production" as contemplated by the contracts was non-existent. In an unpublished Ohio case, *Tisdale v. Walla,* 1994 WL 738744 (Ohio App. 11 Dist.1994), the court addressed whether the well owner/lessee could terminate the lessors' domestic use of the gas in order to eliminate lessee's need to secure an alternative, additional gas supply for his pig farm. Lessee therein argued the leases had terminated, as a matter of law, due to lack of commercial production. The Ohio Court of Appeals defined "production" as "produced in paying quantities", and thus found the parties' domestic use did not serve to extend the term of the leases. While not bound by the findings of the Ohio Court of Appeals, we nevertheless agree with its reasoning and find appellees' everyday use of the gas provided by appellant/lessee's wells did not constitute production as contemplated by the leases so as to extend the duration thereof.

Appellant herein also argued appellees' failure to secure a judicial determination he had forfeited the leases by breaching his contractual obligations provided him with an affirmative defense and guaranteed him a "reasonable time" within which to remedy the alleged breach. *Tisdale* is instructive regarding this issue also. The *Tisdale* contract contained a judicial ascertainment clause almost identical to that contained in appellant's leases. There the court reasoned

the clause did not modify the limitation provision of the habendum clause. A judicial determination of forfeiture therefore was unnecessary because the lease had expired by its own terms. Having found the reasoning of *Tisdale* convincing, we agree with the trial court's finding the "and as long thereafter clause", "combined with due determination that the wells are no longer being produced necessitate the conclusion that the leases have expired by their own terms and a judicial [determination of] forfeiture is not required." (Slip Op. at 7.) Appellant's argument he is entitled to a reasonable time period within which to remedy his breach was rejected by the trial court, albeit not in specific terms. As reasoned above, appellees' leases have long since expired as a matter of law. The undisputed facts establish appellant has had, at a minimum, five years within which to take steps necessary to breathe life into the long-defunct wells, yet has failed to do so. To encumber the lessors' land indefinitely would be inequitable. See *White v. Young,* 409 Pa. 562, 186 A.2d 919 (1963).

Having found appellant's arguments challenging the trial court's findings unconvincing, we affirm the judgment entered in favor of the appellees.

Judgment affirmed.